<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLY AVRAHAM and JENNY SORENSEN, <br><br> Plaintiffs, <br><br> v. <br><br> SPENCER GOLDEN a/k/a PETER CALDERON and SARAH MCCLATCHY, <br><br> Defendants, | Case No: 18-11795 (SDW) (JAD) <br><br><br> **OPINION** <br><br><br> May 7, 2020 |

**WIGENTON,** District Judge.

Before this Court are Defendants Spencer Golden's ("Golden") and Sarah McClatchy's ("McClatchy," collectively, "Defendants") Motions to Dismiss Plaintiffs Carly Avraham ("Avraham") and Jenny Sorensen's ("Sorensen," collectively, "Plaintiffs") Amended Complaint. Golden moves to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2), (5), and (6), and McClatchy moves to dismiss pursuant to Rule 12(b)(1). (D.E. 86, 87.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, Golden's motion is **GRANTED in part and DENIED in part** and McClatchy's motion is **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Jenny Sorensen and Spencer Golden began dating around November 2013 and in June 2014, moved into a Fort Lauderdale, Florida, condominium ("Condo") together. (D.E. 49 ¶¶ 17-

---

[1] For purposes of this Opinion, this Court assumes the facts alleged in the Amended Complaint are true.

23.)  To purchase the Condo, they formed JS Global, Inc. ("JS Global"), incorporated in Florida, for which they hold equal shares under a shareholder agreement, entered on May 22, 2014 ("JS Global Agreement").  (*Id.* ¶¶ 22, 152-53.)  After moving in, Golden became abusive and controlling, physically and sexually assaulting Sorensen multiple times.  (*Id.* ¶¶ 106-114.)

In May 2015, Sorensen developed a social relationship with Carly Avraham, an MRI/CT Technologist.  (*Id.* ¶¶ 24-26.)  While Avraham was visiting Sorensen at the Condo on July 8, 2015, Golden physically attacked both, an act prompted by an argument between Golden and Sorensen several days earlier.  (*Id.* ¶¶ 27-31.)  Soon after, Sorensen asked Golden to move out of the Condo and began a romantic relationship with Avraham.  (*Id.* ¶¶ 36-37.)

In the following months, Golden sent Sorensen and Avraham lewd, disparaging, and threatening texts, including insulting Avraham's Jewish ethnicity and her sexual orientation, and threatening to ruin Avraham's career.  (*Id.* ¶¶ 34, 38-39, 41, 115.)  In October 2015, in an effort to stop Golden, Sorensen visited him in New York, but there, he "enabled her drug and alcohol addictions" and stole her phone to control her Facebook and email.  (*Id.* ¶¶ 116-19, 127-28.)

In November 2015, Golden created and distributed fliers falsely stating that Avraham was under investigation for Health Insurance Portability and Accountability Act ("HIPAA") violations, and used a picture of Avraham taken from her Facebook page ("Facebook Picture").  (*Id.* ¶¶ 44-46.)  Around this time, Golden also sent a letter to Avraham's employer accusing her of misconduct, caused Google searches of her name to result in false information about her, and contacted members of her family accusing her of crimes and outing her sexual orientation.  (*Id.* ¶¶ 48-49, 61-75.)  Avraham was ultimately terminated from her job.  (*Id.* ¶¶ 52.)

Around May 2016, Plaintiffs moved to New Jersey, and Avraham started working at St. Clare's Hospital ("St. Clare's") in October 2016.  (*Id.* ¶¶ 77, 88.)  There, on June 28, 2017,

Avraham was to administer a CT scan with a colleague for Sarah McClatchy.  (*Id.* ¶¶ 90-91.)  As part of the procedure, Avraham and her colleague left the procedure room, but upon returning, Avraham found that McClatchy had unexpectedly left.  (*Id.* ¶¶ 92-95.)  Around August 2017, Defendants posted a review on Google ("August Review") falsely writing that Avraham "touched me in an inappropriate manner and hit on me."  (*Id.* ¶¶ 97-99.)  On August 11, 2017, Avraham was terminated from St. Clare's due to a complaint of "unprofessional behavior . . . during an exam."  (*Id.* ¶ 96.)  Golden compensated or encouraged McClatchy's conduct.  (*Id.* ¶ 105.)

Golden continued to "regularly post[] invasive and injurious material" about Avraham online and added her email to distributions for pornographic materials.  (*Id.* ¶¶ 135-39.)  He also continued to post the Facebook Picture, including on October 10, 2018, after Avraham had registered a copyright for it, with an effective date of June 5, 2018.  (*Id.* ¶¶ 137-38, 160.)  Golden also responded to Sorensen in an email on March 7, 2018 by threatening Avraham, and sent Sorensen another email, on March 5, 2019, threatening her.  (*Id.* ¶¶ 134, 144.)  On March 6, 2019, Sorensen received a temporary restraining order in the Superior Court of New Jersey, Family Part ("Superior Court") against Golden.  (*Id.* ¶¶ 144-48.)  On May 8, 2019, the Superior Court declined to enter a final restraining order against Golden.  (D.E. 86-2 at 185:4-12, 188:1-7.)

During this time, Golden had been renting out the Condo without compensating Sorensen, and in February 2019, he listed the Condo for sale without Sorensen's approval.  (D.E. 49 ¶¶ 156-57.)  Per the JS Global Agreement, JS Global would not "sell, lease, exchange or dispose of any of [JS Global's] assets," over $5,000, without "prior written approval of all the Shareholders."  (*Id.* ¶ 154.)  As of the filing of the Amended Complaint, the Condo's sale was pending.  (*Id.* ¶ 157.)

Avraham filed the first Complaint before this Court on July 18, 2018 ("Original Complaint").  (D.E. 1.)  Thereafter the parties briefed motions for default judgment and to vacate

default, and the Court vacated the default.  (D.E. 12, 24, 25, 34.)[2]  Golden then filed a motion to dismiss on March 12, 2019, pursuant to Rules 12(b)(5) and (6).  (D.E. 37.)  In response, Avraham filed the Amended Complaint, adding Sorensen as a plaintiff and making new factual assertions and claims.  (D.E. 49.)  Defendants moved to dismiss on April 30, 2019 (D.E. 57, 58),[3] and after a couple rounds of withdrawing and refiling their motions (D.E. 70, 81), both Defendants filed the instant motions to dismiss on November 22, 2019, and they were timely briefed.  (D.E. 86-91.)

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) may present either a facial or factual attack to a court's subject matter jurisdiction.  "A facial attack 'contests the sufficiency of the complaint because of a defect on its face,' whereas a factual attack 'asserts that the factual underpinnings of the basis for jurisdiction fail to comport with the jurisdictional prerequisites.'"  *Halabi v. Fed. Nat'l Mortg. Ass'n*, Civ. No. 17–1712, 2018 WL 706483, at *2 (D.N.J. Feb. 5, 2018) (internal citations omitted).  When reviewing facial attacks, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (*citing In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).  In contrast, with a factual attack, "a court may weigh and 'consider evidence outside the pleadings.'"  *Id*. (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2).  Rule 4(e) authorizes federal courts to exercise "personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits."

---

[2] With his motion to vacate the default, Golden additionally filed a motion to dismiss pursuant to Rule 12(b)(6) (D.E. 24-4), which the Court, before then-Chief Judge Linares, denied without prejudice.  (D.E. 34.)
[3] Golden for the first time moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (D.E. 57.)

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir.1998) (internal citations omitted).  "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)).  In the context of a Rule 12(b)(2) motion to dismiss, "when the court does not hold an evidentiary hearing . . . the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc.*, 384 F.3d at 97.

Rule 12(b)(5) allows a district court to dismiss a case for insufficient service of process.  "The party asserting the validity of service bears the burden of proof," *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993), and district courts have "'broad discretion' when assessing" these motions.  *Wahab v. New Jersey Dep't of Envt'l. Prot.*, Civ. No. 12-6613, 2017 WL 4790387, at *5 (D.N.J. Oct. 24, 2017) (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992)).  "Where a plaintiff acts in good faith," but service was improper, "courts are reluctant to dismiss an action," and will instead "elect to quash service and grant plaintiff additional time to properly serve the defendant."  *Id.* (internal citations omitted).

A defendant may also move to dismiss a complaint for failing to state a claim under Rule 12(b)(6).  An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III.   DISCUSSION

This Court will first address Golden's motion to dismiss (D.E. 86) before addressing McClatchy's motion to dismiss. (D.E. 87.)

### A.  **Defendant Golden's Motion to Dismiss**

Golden moves to dismiss: (1) Counts 1 and 6 as to Avraham, and Counts 3 and 11-13 as to Sorensen under Rule 12(b)(2) for lack of personal jurisdiction; (2) Counts 1, 3-7, and 13 under Rule 12(b)(6) for failure to state a claim; (3) Count 8, under a theory of abstention; and (4) the entire Amended Complaint for insufficiency of service under Rule 12(b)(5). (D.E. 86-1 at 4-5.)[4]

---

[4] Count 1 is Copyright Infringement; Count 3 is Intentional Infliction of Emotional Distress; Count 4 is Intrusion upon Seclusion; Count 5 is Defamation; Count 6 is Publication of Private Fact; Count 7 is False Light Invasion of Privacy; Count 8 is Cyberharassment under Florida law; Count 11 is Anticipatory Breach of Contract; Count 12 is Breach of Contract; and Count 13 is Assault and Battery. Golden does not move to dismiss Counts 2 (Tortious Interference) or 9 (Computer Related Offenses under New Jersey Law). Plaintiffs inadvertently skip Count 10.

### i. Personal Jurisdiction

At issue is whether (1) Golden waived his personal jurisdiction defense; (2) there is specific personal jurisdiction over Golden; and (3) there is pendent personal jurisdiction over him.[5]

### 1.  Waiver of Personal Jurisdiction

"A party who fails to raise personal jurisdiction as a defense in a Rule 12 motion waives the defense and cannot raise it in an answer or in a subsequent motion."  *Hull v. Glob. Digital Sols., Inc*., Civ. No. 16-5153, 2018 WL 4380999, at *11 (D.N.J. Sept. 14, 2018) (citing *Myers v. American Dental Ass'n*, 695 F.2d 716, 720 (3d. Cir.1982)); Fed. R. Civ. P. 12(h)(1)(B)(i).

Golden moved to dismiss the Original Complaint on January 22, 2019, and on March 12, 2019 ("Original Motions"), but did not raise a personal jurisdiction argument either time.  (*See* D.E. 24, 37.)  He first raised this defense when he moved to dismiss the Amended Complaint on April 30, 2019.  (D.E. 57-1 at 15.)  This defense was available to Golden when he made the Original Motions and is thus waived for Counts 1-8 as to Avraham.  *See Hull*, 2018 WL 4380999 at *11-12 (noting that the "filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading"); *see also* 5C C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1391 (3d ed. Apr. 2020 Update).  Golden, however, did not waive his personal jurisdiction defense as to Sorensen's claims in Counts 3 and 11-13, which were not in the Original Complaint.  The Court will therefore examine whether it has personal jurisdiction over these claims.

### 2.  Specific Personal Jurisdiction

At issue is whether Golden, a Florida resident, had "minimum contacts" with New Jersey, such that this Court has specific personal jurisdiction over him.  *See Marten v. Godwin*, 499 F.3d

---

[5] The parties do not contest that there is no general personal jurisdiction over Golden.

290, 296 (3d Cir. 2007).  Personal jurisdiction may be found where: (1) defendant "purposefully directed his activities at the forum"; (2) plaintiff's claim relates to or arises out of "at least one of those specific activities"; and (3) "the assertion of jurisdiction otherwise comport[s] with fair play and substantial justice."  *Id*. (internal citations and quotation marks omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985).

For intentional torts, specific jurisdiction may also be found using the "effects test," which has three elements: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the [tortious] harm in the forum . . . [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).  Defendant's contacts with the forum state must be "such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and the Court will examine specific jurisdiction claim-by-claim.  *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Initially, Plaintiffs do not appear to substantively contest this Court's lack of specific jurisdiction over Sorensen's contract and assault and battery claims (Counts 11-13) which occurred in Florida.  (*See* D.E. 86-1 at 25-27; D.E. 89 at 2-6.)[6]  As pleaded, these claims are also a significant part of Sorensen's intentional infliction of emotional distress ("IIED") claim.  (D.E. 49 ¶ 183.) Much of the remaining components of Sorensen's IIED claim also occurred outside New Jersey (*see, e.g.*, *id*. ¶¶ 27, 38, 41, 106-32), and Golden's conduct specifically aimed toward harming Sorensen while she lived in New Jersey, as pleaded, appears limited to a threatening March 5,

---

[6] All instances making up Golden's alleged assault and battery of Sorensen occurred in Florida (and potentially New York), while Sorensen was domiciled in Florida.  (*See* D.E. 49 ¶¶ 27-31, 106-22.)  Similarly, Sorensen's breach of contract claims revolve entirely around Florida—the contract, the JS Global Agreement, creates a Florida entity (JS Global), relates to a Florida property (the Condo), and Sorensen and Golden were Florida domiciliaries when it was signed.  (*See id.* ¶¶ 21-22, 152-53, 156-58); *see also Remick*, 238 F.3d at 256 (noting "the totality of the circumstances" surrounding  a contract should be considered in determining whether specific jurisdiction exists over a contract claim).

2019 email.  (*Id.* ¶¶ 144-50.)[7]  Thus, Sorensen did not feel the "brunt" of her tortious harm in New

Jersey, and New Jersey was not the "focal point of the tortious activity."  *IMO Indus., Inc.*, 155

F.3d at 267-68.[8]  This Court does not have specific jurisdiction over Sorensen's IIED claims.

3.   Pendent Personal Jurisdiction

Plaintiffs primarily argue that this Court may instead exercise pendent personal jurisdiction

over these claims.  Pendent personal jurisdiction applies to claims "aris[ing] from the same nucleus

of material fact[s]" as claims for which there is already personal jurisdiction.  *MaxLite, Inc. v. ATG*

*Elecs., Inc*., 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (internal citations omitted).  When exercising

such jurisdiction, the Court should use a "discretionary approach," considering "judicial economy,

convenience, and fairness to litigants."  *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3d Cir.

1973) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

"The Third Circuit takes a liberal interpretation in considering the scope of a 'common

nucleus of operative fact[s].'"   *MaxLite, Inc.*, 193 F. Supp. 3d at 390 (citations omitted).

"[T]angential overlap of facts is insufficient, but total congruity between operative facts of the two

cases is unnecessary."  *Id*. (quoting *Nanavati v. Burdette Tomlin Mem'l Hosp*., 857 F.2d 96, 105

(3d Cir.1988)).  A common nucleus of operative facts exists when the "critical background facts"

---

[7] Plaintiffs point out a March 7, 2018 email and other emails "in connection with [Golden's] false" offers to help remove defamatory posts, as examples constituting Sorensen's IIED claims, while she was in New Jersey.  (D.E. 89 at 8-9.)  As pleaded, however, these instances actually threaten or target Avraham.  (*See* D.E. 49 ¶¶ 84-87, 134-36 (pleading both were attempts to "inflict severe emotional distress upon" or "defame and harass" Avraham specifically).)  To the extent Plaintiffs now argue that Golden's threats or harassing conduct toward Avraham are a part of Sorensen's IIED claim, they provide no support for this proposition.  *Cf.* Restatement (Second) of Torts § 46(2)(a)-(b) (stating that where "conduct is directed at a third person, the actor is subject to liability" only if the third person is plaintiff's "immediate family who is present at the time," or if plaintiff is present and the conduct "results in bodily harm"); *Krishanthi v. Rajaratnam*, Civ. No. 09-05395, 2010 WL 3429529, at *15 (D.N.J. Aug. 26, 2010) (same).

[8] Golden also argues that this issue should not be relitigated because the Superior Court found it lacked personal jurisdiction over Sorensen.  (D.E. 86-1 at 23-24.)  Though not necessary to its decision here, this Court finds that the Superior Court's restraining order decision is not dispositive.  *See L.T. v. F.M*., 102 A.3d 398, 404 (N.J. App. Div. 2014) (affirming declination to apply collateral estoppel where underlying restraining order decision was made without discovery, "in a summary matter"); *C.L. v. J.L.*, No. A-0314-16T3, 2018 WL 2207560, at *4 (N.J. Super. Ct. App. Div. May 15, 2018); (D.E. 86-2 at 9:1-3 (noting Superior Court proceeding was a summary proceeding)).

of the claims are the same. *Id.* At issue is whether Sorensen's claims have a common nucleus of operative facts with Avraham's claims, over which this Court has personal jurisdiction.

Initially, this Court finds that it does not have pendent personal jurisdiction over Sorensen's breach of contract claims, and most of her assault and battery claims. The operative facts of Sorensen's breach of contract claims relate only to her contract with Golden and Golden's breach, and do not overlap with the operative facts pertaining to Golden's other allegedly tortious conduct, or to Avraham. (*See* D.E. 49 ¶¶ 152-58, 229-38.) Similarly, virtually all of Golden's alleged physical and sexual abuse of Sorensen occurred prior to her and Avraham meeting, or without Avraham present or substantively involved. (*See id.* ¶¶ 108-14.) This Court, however, exercises pendent jurisdiction over the assault and battery which occurred on July 8, 2015, which entirely overlaps with Avraham's assault and battery claim. (*Id.* ¶¶ 28-31.)[9]

This Court also finds that Sorensen's IIED claim does not share a common nucleus of operative fact with Avraham's claims. Sorensen's IIED claim is in significant part based on Golden's alleged breach of contract and his physical and sexual abuse of Sorensen, which, as just discussed, largely do not share a common nucleus of operative fact with Avraham's claims. (*See id.* ¶¶ 5, 106-114, 116, 183.) In contrast, Avraham's claims are mostly based on Golden's alleged scheme to defame and harass her, interfere with her employment prospects, and intrude on her privacy. (*See, e.g.*, *id.* ¶¶ 4, 63, 76, 87, 182.)[10] While there is some overlap given Golden's harassing communications to both, the critical facts for Plaintiffs' respective claims largely differ. *See Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 253 (E.D. Pa. 2012) (finding no common nucleus of operative fact between two claims against defendant even though

---

[9] Golden does not challenge personal jurisdiction as to Avraham's assault and battery claim. (D.E. 86-1 at 26-27.)

[10] For example, the vast majority of Avraham's claims in this action (Counts 1-2, 4-9) only pertain to Golden's conduct toward Avraham, and do not substantively relate to Sorensen. (*See* D.E. 49 ¶¶ 182-83.)

defendant's actions for both had the common goal of "eliminat[ing]" plaintiff's medical practice).[11] This Court does not have pendent personal jurisdiction over Sorensen's IIED claim.

### ii.   Failure to State a Claim

Golden additionally moves to dismiss Counts 1, 3-7, and 13 for either failing to plead the elements of the claim or as barred by the statute of limitations, or both.

#### 1.   Count 1:  Copyright Infringement

The parties only dispute whether Avraham may recover statutory damages or attorney's fees for copyright infringement of the Facebook Picture.  (*See* D.E. 90 at 2-3.)  There will be "no award of statutory damages or of attorney's fees" where the infringement "commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).

Here, the Facebook Picture's effective registration date of June 5, 2018 is well over three months after its first publication, which was sometime before Golden first used it in November 2015.  (D.E. 49 ¶¶ 44-45, 160.)  Therefore, Avraham is barred from statutory damages or attorney's fees based on Golden's infringement, including for his continuing infringement of the same image after the effective registration date.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700-01 (9th Cir. 2008) (finding "§ 412 bars an award of statutory damages for [continuing] post-registration infringements when the initial act of infringement occurred prior to the effective copyright registration date," when the copyright registration date was more than three months after the date of first publication); *Feldhacker v. Homes*, 173 F. Supp. 3d 828, 833 (S.D. Iowa 2016) (noting the First, Second, Fourth, Fifth, and Sixth Circuits have found the same).

---

[11] Though Plaintiffs allege some communications in which Golden threatens or disparages Plaintiffs together (*see* D.E. 49 ¶¶ 41, 144), most of his actions are targeted toward only Avraham.  This includes messages he sends Sorensen, in which he only writes of his conduct towards Avraham.  (*See, e.g., id.* ¶¶ 39-41, 50-51, 54-55, 78-80, 87, 115, 119, 134.)  As noted earlier, this Court does not construe conduct targeting Avraham as part of Sorensen's IIED claim.

2.   Choice of Law – Statute of Limitations

A key question to the remaining tort-based claims is whether New Jersey's or Florida's statute of limitations applies. A federal court sitting in diversity must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941). Following Section 142 of the Restatement (Second) of Conflict of Laws ("Section 142"), a New Jersey court will "generally apply its statute of limitations" when it "has a substantial interest in the litigation," unless "exceptional circumstances would render that result unreasonable." *McCarrell v. Hoffmann-La Roche, Inc*., 153 A.3d 207, 221-22 (N.J. 2017). Where New Jersey does not have a substantial interest, the court will apply the statute of limitations of the state with "a more significant relationship to the parties and the occurrence." *See id*.

The key dates are July 18, 2018, when Avraham filed the Original Complaint, April 2, 2019, when Sorensen brought her claims and Avraham brought her assault and battery claim, and May 2016, when Plaintiffs moved from Florida to New Jersey. (*See* D.E 49 ¶¶ 77, 132.) This Court will examine the choice of law considerations for each claim "issue-by-issue." *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 64 (N.J. App. Div. 2017).

3.   Count 3:   Intentional Infliction of Emotional Distress

To state a claim for IIED, plaintiff must show defendant's actions were: (1) "intentional[] or reckless[]"; (2) "extreme and outrageous"; (3) "the proximate cause of plaintiff's emotional distress"; and (4) that "the emotional distress suffered by the plaintiff [is] so severe that no reasonable [person] could be expected to endure it." *Buckley v. Trenton Saving Fund Soc*., 544 A.2d 857, 863 (N.J. 1988) (internal citations omitted). At issue is whether this claim is time-barred and fulfills elements two and four.

a.   Statute of Limitations

12

New Jersey's statute of limitations for IIED is two years, N.J. Stat. Ann. 2A:14-2(a), while Florida's is four years.  Fla. Stat. § 95.11(3)(o).  Avraham's IIED claims are based on acts beginning in July 2015 and continuing through the present.  (D.E. 49 ¶¶ 34, 41, 135, 150-51.)  Thus, under Florida law, the entire claim would be timely, while under New Jersey law, actions against Avraham prior to July 18, 2016, would be time-barred.

This Court finds New Jersey's statute of limitations applies.  Though starting in Florida, Golden's alleged harassing online conduct, invasions of privacy, and attempts to hurt Avraham's career continued for years after Avraham's New Jersey move.  (*See, e.g.*, D.E. 49 ¶¶ 86-87, 101, 135-39.)  As Avraham suffered a significant amount of tortious harm in New Jersey, New Jersey holds a significant interest in this claim, and its statute of limitations applies.  *See Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 509 (D.N.J. 2017) (noting New Jersey generally has a "significant policy interest" where its residents suffer tortious conduct).[12]  No "exceptional circumstances" apply here which would render this result "unjust" or "unreasonable," given New Jersey's clear interest, and given Plaintiffs, New Jersey domiciliaries, filed in New Jersey.[13]

### b.  Elements Sufficiently Pled

Golden additionally argues that Avraham's allegations after July 18, 2016, which are not time-barred, fail to satisfy the elements of IIED.  (D.E. 90 at 10.)  Reading the Amended Complaint in the light most favorable to Avraham, this Court finds the elements of IIED are sufficiently pled.

---

[12] New Jersey additionally holds a "substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'"  *See* Restatement (Second) of Conflict of Laws § 142 comment f (1971).

[13] This Court makes no comment on whether New Jersey has a stronger interest than Florida, but notes that application of New Jersey law does not seriously interfere with Florida's interests.  *See* Restatement (Second) of Conflict of Laws § 142 comment f (1971) (noting that after a dismissal under these circumstances "plaintiff will usually remain free to sue on the merits in another state.  For this reason, the refusal of a court to entertain a claim that is barred by its statute of limitations is unlikely to impinge seriously upon the interests of another state").  Also, the Second Restatement suggests this situation – a plaintiff selecting a forum with an unfavorable statute of limitations, then invoking the statute of limitations of another state – is "rare," and in such cases, an exceptional circumstance may be where no alternative forum is available.  *Id.*  That is not the case here, where Florida provides an alternative jurisdiction.

First, Avraham sufficiently pleads extreme and outrageous behavior, alleging that Golden facilitated false, public accusations of her sexual and professional misconduct and essentially acted on a "personal vendetta . . . [with] concerted movement to drive [Avraham] from [her] job and maliciously to undermine any support [she] might have." *Juzwiak v. Doe*, 2 A.3d 428, 434 (N.J. App. Div. 2010) (internal citations omitted); *see, e.g.*, D.E. 49 ¶¶ 97-99, 135-38, 144-45, 150-51, 185.[14]  Second, at this stage, Avraham sufficiently pleads extreme emotional distress by alleging that she "experienced . . . mental anguish and personal humiliation," and consequently "suffer[ed] frequent bouts of depression," and "shame and embarrassment."  (D.E. 49 ¶¶ 150, 185.)[15]

### 4.   Count 4:  Intrusion upon Seclusion

Intrusion upon seclusion occurs when there is an "intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs." *Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994).  The statute of limitations is two years under New Jersey law, N.J. Stat. Ann. 2A:14-2(a), and four years under Florida law. Fla. Stat. § 95.11(3)(o).

The statute of limitations analysis here is effectively the same as it is for Avraham's IIED claim.  Her allegations first arose in October 2015, while she was in Florida, and continue to the present day, for example, with Golden's efforts to harass her by adding her to email distributions of pornographic materials.  (D.E. 49 ¶ 139.)  Because a significant part of this claim occurred in New Jersey, New Jersey retains a significant interest and its statute of limitations applies, barring alleged conduct prior to July 18, 2016.

---

[14] The Amended Complaint also alleges Golden falsely accused Avraham of criminal behavior, and disparaged her sexual orientation and religious and ethnic identity, though not specifically alleging such instances occurred post-June 18, 2016, only stating "effort[s] to defame and harass" her continued.  (*See, e.g.*, D.E 94 ¶¶ 61-63, 135-36, 185, 195.)
[15] The Court notes that Avraham will ultimately need to show more on this claim.  *See Turner v. Wong*, 832 A.2d 340, 348 (N.J. App. Div. 2003) (suggesting at summary judgment, more concrete evidence is needed, for example evidence of medical assistance or counseling).  The parties do not dispute that the other two elements, that Golden's actions were intentional or reckless and were the proximate cause of Avraham's harm, are satisfied.

### 5.   Count 5:  Defamation

To allege defamation, "plaintiff must plead facts sufficient to identify the defamatory words, their utterer, and the fact of their publication." *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. App. Div. 1986).  New Jersey's statute of limitations for defamation is one year.  N.J. Stat. Ann. 2A:14-3.  Florida's is two years.  Fla. Stat. § 95.11(4)(g).

The statute of limitations analysis here is also effectively the same.  Golden's allegedly defamatory actions began in November 2015 when he distributed filers defaming Avraham, and "regularly" continued online after her move to New Jersey, including with the August Review in 2017.  (D.E. 49 ¶¶ 44-47, 97-105, 135-38.)  Thus, New Jersey has a significant interest here and Avraham's defamation claims stemming from prior to July 18, 2017 are time-barred.

### 6.   Count 6:  Publication of Private Fact

Publication of private fact requires pleading:  "(1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Leach v. Dist. Bd. of Trustees of Palm Beach*, 244 F. Supp. 3d 1334, 1339 (S.D. Fla. 2017); *Romaine v. Kallinger*, 537 A.2d 284, 292 (N.J. 1988). The statute of limitations is two years in New Jersey, *see Smith v. Datla*, 164 A.3d 1110, 1121 (N.J. App. Div. 2017), and four years in Florida. *See Baucom v. Haverty*, 805 So. 2d 959, 960 (Fla. Dist. Ct. App. 2001).[16]

### a.   Statute of Limitations

The publications in question are Golden's disclosures of Avraham's sexual orientation. (*See* D.E. 89 at 12; D.E. 49 ¶¶ 206-07.)  These occurred around late 2015 and early 2016, in Florida, while all parties lived in Florida.  (*See* D.E. 49 ¶¶ 64, 68-75.)  As pled, New Jersey has no relation to this claim outside of Avraham's current domicile, and thus does not have a substantial

---

[16] This Court notes that dictum in an earlier New Jersey Supreme Court case states that the statute of limitations is one year. *See Rumbauskas*, 649 A.2d at 858.

interest here. *See MTK Food Servs., Inc. v. Sirius Am. Ins. Co.*, 189 A.3d 914, 918 (N.J. App. Div. 2018). Therefore, because Florida has the most significant relation to this claim, Florida's four-year statute of limitations and substantive law apply. *See McCarrell*, 153 A.3d at 221-22.

### b.   Elements Sufficiently Pled

The parties primarily dispute whether the "publication" element is satisfied. As alleged, Golden told "several" of Avraham's relatives her sexual orientation and posted a YouTube video in which he called Avraham "a wretched pitiful lesbian" in the title. (D.E. 49 ¶¶ 64, 68-75.) Golden's posting of a presumably publicly accessible YouTube video satisfies the publication element, though as alleged, the disclosure to her relatives does not. *See Leach*, 244 F. Supp. 3d at 1339-40 (noting conclusory allegations of publication to "large numbers of persons" is insufficient, but disclosure on "any publication in a newspaper or a magazine, even of small circulation . . . or any broadcast over the radio . . . is sufficient to give publicity" (quoting Restatement (Second) of Torts § 652D comment a (1977))). Thus, Avraham sufficiently states this claim.[17]

### 7.   Count 7:   False Light Invasion of Privacy

"The tort of false light has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1116 (N.J. 2009) (internal citations and quotation marks omitted).[18]

---

[17] Golden also contests whether Avraham's sexual orientation was "private." (D.E. 86-1 at 18.) There is no indication that, prior to Golden's alleged conduct, anyone else, aside from Plaintiffs and Golden, knew her sexual orientation. The fact that Golden knew it does not necessarily make it public. *See Smith v. Volusia Cty., Fla.,* Civ. No. 11-35-Orl-28, 2011 WL 1598741, at *1, 6 (M.D. Fla. Apr. 28, 2011) (claim sufficiently stated where defendant learned of private fact after plaintiff reported it to him, and which he disclosed). The parties do not argue the other elements of the claim.
[18] The parties do not dispute that New Jersey's one-year statute of limitations applies here, given Florida does not have a cause of action for false light invasion of privacy. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1100 (Fla. 2008).

Golden argues that this claim should be dismissed as duplicative of Avraham's defamation claim, as both are based off the same October 10, 2018 statement.  (D.E. 90 at 8.)  This Court disagrees, as the two claims are distinct under New Jersey law.  *See Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 907 (D.N.J. 1986); Restatement (Second) of Torts § 652E comment b (1977) (noting a "plaintiff can proceed upon either theory, or both").

### 8.  Count 13:  Assault and Battery

Assault is "an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt."  *Doe v. Epstein*, 611 F. Supp. 2d 1339, 1343 (S.D. Fla. 2009).  If such attempt is "consummated, [it] constitutes battery."  *Id*. The statute of limitations in New Jersey is two years, N.J. Stat. Ann. 2A:14-2(a), and four years in Florida.  Fla. Stat. § 95.11(3)(o).  As alleged, Golden's assault and battery on July 8, 2015 would be barred under New Jersey's, but not Florida's statute of limitations.  (D.E. 49 ¶¶ 29-31.)

Plaintiffs' assault and battery claim occurred entirely in Florida while Plaintiffs were domiciled in Florida.  (*See* D.E. 49 ¶¶ 29-31, 109-14.)  Thus, this Court finds New Jersey has no significant interest, and because Florida has the most significant interest in this claim, Florida statute of limitations applies.  *See McCarrell*, 153 A.3d at 221-22.

### iii.  Count 8:  Cyberharassment Under Florida Statute § 784.0485

Florida Statute § 784.0485 ("Section 784") states that "a petition for an injunction for protection against stalking [including cyberstalking] may be filed in the circuit where the petitioner currently or temporarily resides, where the respondent resides, or where the stalking occurred." Fla. Stat. § 784.0485(1)(f).  Thus, because a Section 784 petition "may only be filed in the Florida [state] circuit court," this Court dismisses this claim.  *Harvick v. Oak Hammock Pres. Cmty.*

*Owners Ass'n Inc.*, Civ. No. 14-937-ORL-40, 2015 WL 667984, at *5 (M.D. Fla. Feb. 17, 2015) (federal court dismissing claim for lack of jurisdiction).[19]

### iv.   Insufficient Service of Process Pursuant to Rule 12(b)(5)

Per the Federal Rules, an individual may be served by "following state law . . . in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Pursuant to Florida Statute § 48.031 ("Section 48.031"), which governs service of process in Florida:

> If the only address for a person to be served which is discoverable through public records is a private mailbox . . . substituted service may be made by leaving a copy of the process with the person in charge of the private mailbox . . . but only if the process server determines that the person to be served maintains a mailbox . . . at that location.

Fla. Stat. § 48.031(6)(a).

In lieu of personal service, Plaintiffs, after determining Golden no longer resided at his last known address, served the Original Complaint with someone in charge of Golden's private mailbox.  (*See* D.E. 4.)  Golden, however, showed evidence that a public search at the time of service would have revealed he owned real property at 6264 Vanderbilt Drive, Keystone Heights, Florida.  (D.E. 24-1 ¶¶ 15-16; D.E. 24-2 at 2.)  Thus, his private mailbox was not the "only address" available through a public records search, and service was improper.  Fla. Stat. § 48.031(6)(a); *see also Beckley v. Best Restorations, Inc.*, 13 So. 3d 125, 126-27 (Fla. Dist. Ct. App. 2009).[20]

Nevertheless, this Court has "broad discretion" in deciding a Rule 12(b)(5) motion and "[w]here a plaintiff acts in good faith, but fails to effect proper service of process, courts are reluctant to dismiss an action."  *Guzman v. Mana*, Civ. No. 17-2551, 2018 WL 10151023, at *1

---

[19] Plaintiffs also do not "substantially follow" the specific format that Section 784 mandates, warranting dismissal. *See, e.g.*, Fla. Stat. § 784.0485(1)(a), (3)(b)-(f); *see also Harvick*, 2015 WL 667984, at *5.  This Court does not reach Golden's arguments regarding abstention.

[20] Plaintiffs do not appear to contest a public search would reveal the 6264 Vanderbilt Drive address, but instead argue it was listed as "vacant" and thus not an "address" for service purposes.  (D.E. 89 at 17-18.)  This Court rejects that argument as Golden's interpretation of the statute comports more with its plain language.  *See Mauro v. Alldredge*, Civ. No. 12-1333-ORL-22, 2012 WL 12904718, at *1-2 (M.D. Fla. Dec. 12, 2012) (finding service on private mailbox improper even when all other publicly available addresses were discovered to be vacant).

18

(D.N.J. Dec. 6, 2018) (internal citations and quotation marks omitted).  Instead, this Court will quash the initial service as to Golden and grant Plaintiffs a thirty (30) day extension upon which to properly serve Golden.  *Id.*[21]

### B.  **Defendant McClatchy's Motion to Dismiss**

McClatchy moves to dismiss Counts 2 and 5 (tortious interference and defamation, respectively) under Rule 12(b)(1) for lack of subject matter jurisdiction.  At issue is whether this Court has diversity jurisdiction under 28 U.S.C. § 1332 over the claims against McClatchy, and if not, whether there is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  The parties only dispute whether the amount in controversy of $75,000 is met.  Plaintiffs bear the burden in proving this by a preponderance of the evidence, but "that burden is not especially onerous," as "if the claim is apparently made in good faith[, i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (internal citations omitted).

To determine the amount in controversy, this Court may consider out-of-pocket costs, as well as non-frivolous claims of punitive damages, "impairment to reputation . . . personal humiliation, mental anguish, and suffering to the extent that they flow from the reputational

---

[21] "[I]n determining whether to grant a discretionary extension," the court may consider several factors including "1) actual notice of the action, 2) prejudice to the defendant, 3) statute of limitations, 4) conduct of the defendant, 5) whether the plaintiff is represented by counsel, and 6) any other relevant factor."  *Guzman*, 2018 WL 10151023 at *2 (internal citations and quotation marks omitted).  Golden had actual notice of this action for over a year, there is no indication that he has been prejudiced, and "Plaintiffs appear blameless for their attorneys' mistake in failing to serve [Golden]."  *Id*.

injury." *See W.J.A. v. D.A.*, 43 A.3d 1148, 1154 (N.J. 2012) (noting such damages are available for defamation); *see also Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011).

Avraham has submitted a declaration, dated October 15, 2018, stating that she lost $109,666.67 in earnings since August 2017, approximately the date she was terminated from St. Clare's, and has spent $10,950.62 in medical expenses related to her defamation and tortious interference claims.  (D.E. 12-1 ¶ 30.)  She states that she has suffered reputational and pain and suffering damages due to these claims, and is additionally entitled to punitive damages, but cannot quantify these amounts with any specificity at this juncture.  (*Id.*; D.E. 49 ¶¶ 178-79, 203-04.)

In contrast, McClatchy presents evidence that Avraham's total lost wages are $22,000, and argues McClatchy's liability for compensatory damages is even lower due to a number of other factors.  (D.E. 90 at 2; D.E. 91-1.)[22]  Even assuming this is true, however, this Court cannot say at this stage that, with the addition of potential reputational, pain and suffering, and/or punitive damages, the amount in controversy is legally certain to be under the jurisdictional threshold of $75,000.  *See Good 'N Nat. v. Nature's Bounty, Inc.*, Civ. No. 87-662, 1990 WL 127126, at *16 (D.N.J. Aug. 30, 1990) (district court unable to find with certainty plaintiff did not meet amount in controversy, where plaintiff's "compensatory damages may be difficult to prove," and plaintiff's punitive damages claim was not "wholly without merit"); *Swift v. Pandey*, Civ. No. 13-649, 2014 WL 1366436, at *3 (D.N.J. Apr. 7, 2014).  Therefore, at this juncture, this Court finds it has subject matter jurisdiction based 28 U.S.C. § 1332 over the claims against McClatchy.[23]

---

[22] Both Avraham's and Golden's figures appear off—$109,666.67 appears to assume Avraham remained unemployed, while $22,000 assumes Avraham's new job paid the same yearly amount as her St. Clare's job, when neither appears to be true.  (*See* D.E. 91-1.)  At this juncture, this Court will not speculate on the exact figure of the lost wages and cannot determine with legal certainty that the amount in controversy is not met.  This Court also notes that Plaintiffs object to McClatchy's use of an email outlining Avraham's past wages and new employment as privileged under the Federal Rules of Evidence Rule 408.  This Court disagrees, as the email does not make any settlement offer, and does not appear to have been made "during a compromise negotiation[]." Fed. R. Evid. 408(a)(1)-(2); *see also* D.E. 91-1. Regardless, consideration of this letter does not change this Court's decision.

[23] Because diversity jurisdiction applies, this Court need not address the parties' supplemental jurisdiction arguments.

IV.     **CONCLUSION**

For the reasons set forth above, Golden's Motion to Dismiss is **GRANTED in part and DENIED in part**, and McClatchy's Motion to Dismiss is **DENIED**.   An appropriate Order follows.

_s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:       Clerk
cc:         Joseph A. Dickson, U.S.M.J.
            Parties